## FELLOWS *v.* FELLOWS.

An office-copy of a deed constituting part of a party's claim of title, may be given in evidence, without accounting for the absence of the original, after he has proved the deed to himself, or the title by devise, descent, or the like, under which he claims.

It is competent for a jury to infer, from circumstantial evidence, that a
deed, not delivered at the time of its signature, but deposited in the hands
of a third person, was subsequently delivered by the grantor to the
grantee.

e declarations of a person, under whom a party claims, while in posses-
sion, and before a conveyance of his right, impeaching his right, is ad-
missible, because it gives character to such possession, and because the
statement of a grantor in such case binds the grantee, as if made by
himself.

The statements of a party relative to an estate, and written statements rel-
ative to it, made by the administratrix to the court of probate, but in
the absence of the adverse party, are not evidence against the latter.

Evidence of the manner of carrying on a farm is admissible, as tending to
show that it was carried on by the occupant under a claim of right as
owner, and not as a tenant.

In a writ of entry for five sevenths of a farm in Ken-
sington, it appeared, upon the general issue, that Nathan
Fellows, before the 9th of July, 1825, and until his death,
in 1829, was seized of the farm, occupying it as his home-
stead. He left four sons and three daughters, his heirs at
law, among whom were Cyrus, the demandant, and Na-
than, Jr., and a widow, Dorothy, entitled to dower in the
farm.

The demandant produced deeds from four of the heirs
to himself, namely, Jeremiah, Benjamin, Ruth and Phila.

The tenant claimed title under a deed from Nathan to
Nathan, Jr., dated July 9, 1825, and a devise thereof to
her by Nathan, Jr., who was her husband, and who died
in 1852, having appointed her residuary legatee and ex-
ecutrix of his will.

The original deed of Nathan to Nathan, Jr., was not
produced. An office-copy was offered by the tenant, with-
out other proof of the existence of such deed, but it was
proved to the court that search had been made unsuccess-
fully, in the proper places of custody, for the original.

The demandant objected to the copy, but it was ad-
mitted.

The demandant contended that the deed was never deliv-

ered, and introduced the testimony of one of the subscribing witnesses — the other, and the magistrate who took the acknowledgement, being dead ; tending to show that the deed was signed, witnessed and acknowledged by the grantor, in his presence, and by agreement of the parties, was lodged with the magistrate, upon some agreement the terms of which did not distinctly appear.

There was evidence tending to show that the deed was subsequently delivered back by the magistrate to the grantor, and that it was put on record by the grantee, with his father's consent, as some of the evidence tended to show ; other portions of the evidence tending to show it was done fraudulently and against his consent. The question was submitted to the jury, whether the deed was ever delivered by the grantor.

The tenant also claimed that Nathan, Jr., acquired title by adverse possession for twenty years before the date of the writ, August 20, 1853 and much evidence was introduced on both sides, in relation to the occupation and possession of the farm, from the death of the father, in 1829, until the marriage of Nathan, Jr., in 1837, when he moved upon the farm with his wife, and continued to live thereon until his death. The evidence tended to show that the possession was of a mixed character; the daughters, Lucy and Phila, and Nathan, Jr., living there a part of the time with their mother.

The tenant introduced the following testimony on the question of adverse possession, which was objected to by the demandant, but admitted.

1. The testimony of J. D. Wadleigh, as to statements made by Phila, while living on the farm with her mother, and before her deed to the demandant, in a conversation between her, Dorothy and the witness, to the effect that Nathan, Jr., owned the farm, and she had no right there.

2. The testimony of A. Collins, as to a statement made by Nathan, Jr., in 1834, on the occasion of his coming to

the house and finding the plaintiff carrying away potatoes, the farm being rented that year, to the effect that he, Nathan, did not care about the potatoes being carried away, if they, or she, referring to said Dorothy, only left the farm.

3. The testimony of J. Blake, that an agreement or understanding was had between Nathan, Jr., and Dorothy, as administratrix of the estate of her husband, that Nathan, Jr., should assume the payment of the debts against the estate, which the sale of the outlands would not pay : that Nathan, Jr., afterwards stated to the witness, upon being spoken to by him in reference to said estate being represented insolvent, and when neither Dorothy nor any of the heirs were present, that he intended to assume the payment of said debts ; and that, in consequence of the agreement aforesaid, a statement in reference to the condition of the estate, drawn up by the witness, and signed by said Dorothy as administratrix, was made to the judge of probate, on her application for license to sell said outland. This written statement, on which the farm does not appear as part of said Nathan's estate, was introduced by the tenant against the demandant's objection.

4. The testimony of W. Eaton, as to a statement of said Dorothy, while living on the farm, to the effect that she had no right in the farm, and that it was all Nathan, Junior's.

5. The testimony of several witnesses, living in the vicinity of the farm, and having opportunity to know something of the manner in which the farm was occupied and carried on, and having the ordinary intercourse of neighbors with the persons living on it; to the effect that they never heard any of the heirs of Nathan, Sr., except Nathan, Jr., make any claim to the farm, and also to the effect that Nathan, Jr., carried on and managed the farm, as the owners of farms generally carry on and manage their farms.

The demandant moves that the verdict returned for the tenant may be set aside, and for a new trial.

*Stickney*, for the plaintiff.

1. The office-copy of the deed to N. Fellows, Jr., was improperly admitted. Evidence of the existence and loss of the original deed should have been given, before the copy was admissible. 1 Greenl. Ev., secs. 349, 557, 558; *Poignard* v. *Smith*, 8 Pick. 272; *Page* v. *Page*, 15 Pick. 368.

Office-copies of prior deeds are admissible, in making out a chain of title, but the execution of the lost deed must be proved. *Pollard* v. *Melvin*, 10 N. H. 554. The reason why such copies are admitted, is that it is presumed that the original deeds are not in the possession of the party. By our practice, the grantee takes only the immediate deed to himself. In England all the title deeds are delivered to the purchaser, and office-copies of prior deeds are not admissible. *Eaton* v. *Campbell*, 7 Pick. 10. In this case the defendant is executrix and residuary legatee of N. Fellows, Jr., and is presumed to have in her possession all his deeds and papers. The original deed, if one existed, is presumed to be in her possession, just as much as it would be presumed to be in his possession if living, and she should prove the existence and loss of the original deed, before she was allowed to put in secondary evidence. The case of *Forsaith* v. *Clark*, 21 N. H. (1 Foster) 409, is different, and does not apply. One of the heirs of a deceased person is not presumed to have the title deeds, as all the deeds and papers of the deceased go into the hands of the administrator.

2. The testimony of J. D. Wadleigh, as to the statement of Phila Brown, was improperly admitted. She was living, and a competent witness at the time of the trial. The general rule is, that where a person is a competent witness to prove a fact, his declaration as to that fact is

not admissible. *Ross* v. *Knight*, 4 N. H. 236; *Copp* v. *Upham*, 3 N. H. 159.

To make the declarations of persons against their interest competent, it must appear that they are deceased. 1 Greenl. Ev., secs. 147, 148, 116; *Davis* v. *Pierce*, 2 T. R. 53; *Hingham* v. *Ridgeway*, 10 East 109; *Doe* v. *Robson*, 15 East 32; *Cambridge* v. *Lexington*, 2 Pick. 536.

3. The declaration of Nathan, Jr., and of Dorothy, as stated in the testimony of A. Collins, J. Blake and W. Eaton, were inadmissible. A party cannot give in evidence the declarations of the person under whom he claims. The testimony of those witnesses proved merely the declarations of Nathan, Jr., under whom the defendant claims. What he said to Collins about the farm, and to Blake, that he had agreed with Dorothy to assume the debts, and intended to assume them, was nothing more than his mere declaration as to the farm, and as such inadmissible. It was in no sense part of the *res gestæ*, and had no legitimate tendency to prove who owned the farm, or how it was occupied.

The statement presented by Dorothy to the judge of probate was inadmissible. It pretended to contain all the property belonging to the estate of N. Fellows, Sr., but omitted to mention the farm as part of the estate. This was offered as evidence that the farm did not belong to his estate. It was not competent for that or any other purpose.

So the declaration of Dorothy, in presence of W. Eaton, that she had no right in the farm, and it was all Nathan, Jr's, was incompetent. It was simply her declaration, made in the absence of the parties interested, that Nathan, Jr., owned all the farm, and it is not conceived upon what principle it was admissible.

4. The testimony of several of the defendant's witnesses, that they never heard any of the heirs of Nathan, Sr., except Nathan, Jr., make any claim to the farm, and

that Nathan, Jr., managed the farm, as owners of farms generally manage their farms, was improperly admitted. It was not competent for the defendant to prove, as this testimony tended to prove, by implication at least, that the witnesses had heard Nathan, Jr., make claim to the farm. It was merely his declaration, and as such inadmissible; neither was it competent for her to prove that the witnesses never heard any of the other heirs make claim to the farm. There was no occasion or necessity for the other heirs to be asserting their rights to the farm to every person in the neighborhood, and it would be an easy matter in almost any case to get witnesses who never heard a person assert his right to a farm. Such evidence has no legitimate tendency to prove that the person did not own the farm, and should not be received; and besides, the plaintiff could not produce witnesses to testify that they had heard the other heirs make claim to the farm, and deny to that other party the right to produce witnesses, who had heard him make such claim, would be very unjust.

The testimony that Nathan, Jr., managed the farm, as owners generally manage their farms, should not have been received. It is allowing a party to put in his own declarations and his own acts in support of his title, when perhaps those very declarations were made and those acts done with a view to create evidence in support of his own case.

*Marston*, for the defendant.

I. The office-copy of the deed, N. Fellows to N. Fellows, Jr., was admissible on two grounds:

1. The defendant was not a party to it. It was not the last step in her chain of title. Because she happened to be named executrix in the will of her husband, the office-copy was not to be excluded. *Forsaith* v. *Clark*, 21 N. H. (1 Foster) 407; *Southerin* v. *Mendum*, 5 N. H. 420.

2. The case finds that search had been made unsuccessfully, in the proper places of custody for the original; and the production of the registered copy was sufficient evidence that there was in fact such a deed. *Poignard* v. *Smith,* 8 Pick. 278.

But the demandant having himself proved the execution of the deed, at a subsequent stage of the cause, cannot now object that its execution was not sufficiently proved by the tenant. *Wiggin* v. *Damrell,* 4 N. H. 74.

II. The declarations of Phila Brown, as proved by the testimony of Wadleigh, were admissible on the ground of identity of interest with the plaintiff in the suit. *Hobbs* v. *Cram,* 22 N. H. (2 Foster) 130; *Smith* v. *Power,* 15 N. H. 563; *Morrill* v. *Foster,* 33 N. H. 379; *Willis* v. *Farley,* 3 C. & P. 395; *Smith* v. *Smith,* 3 B. & C. 29; *Woodbury* v. *Rowe,* 1 A. & E. 114; *Shays* v. *Brown,* 9 B. & C. 938; 1 N. & M. 422; 8 C. & P. 99.

III. The testimony of Collins, if at all relevant, had some tendency to show a claim of ownership on the part of Nathan, Jr., while on the land, and so was admissible. If it did not tend to prove that fact, it was entirely immaterial, and affords no ground for setting aside the verdict. *Clement* v. *Brooks,* 13 N. H. 92; *Cook* v. *Brown,* 34 N. H. 470.

IV. The testimony of Blake and the testimony of Eaton was introduced solely for the purpose of rebutting the evidence of the plaintiff, tending to show that Dorothy was in possession of the premises under the heirs, or in any way adversely to Nathan, Jr. Questions of evidence must be considered with reference to the particular circumstances under which it was offered. *Doe* v. *Pettitt,* 5 B. & A. 223.

V. The testimony of the neighbors of Nathan, Jr., as to how he occupied and carried on the farm, and that the heirs of Nathan, Sr., made no claim to it, was admissible,

as showing the character of his occupation and the acquiescence of the other heirs in his claim of ownership.

BELL, J. The admissibility of the office-copy seems to have been of interest, chiefly as it affected the burden of proof. There was a witness to the deed living, and the struggle seems to have been who should put him on the stand. The general rule is that where a deed is alleged to be lost, it must be first proved that such a document existed, though slight evidence is sufficient for this purpose, and that a *bonâ fide* and diligent search has been made for it without success, in the places where it was most likely to be found, before secondary evidence of its contents can be introduced. 1 Greenl. Ev. 396, 593; 2 Cowen & Hill's Notes to 2 Phil. Ev. 420.

In many cases, proof of the contents of a deed incidentally comprises evidence of the existence of the original; but in others the proof of the copy affords no evidence of the genuineness or validity of the instrument copied. In the present case the proof of search was sufficient, but no evidence of the existence of the original was offered, except such as results from the character of the copy. If it were an ordinary copy merely, it would not be admissible, without some evidence of the execution and validity of the original.

The tenant here was shown to be the devisee of N. Fellows, Jr., the grantee of the deed in question; and it is said in her behalf, that, having shown her title by devise, she is entitled to use office-copies of the several deeds which form the earlier links in the chain of her title. But the demandant denies the applicability of the ordinary rule in this case, because the tenant is not merely the devisee, but is the executrix and residuary legatee of the testator, and as such entitled to the custody of his deeds and papers. It is said office-copies are admissible only on the presumption that as the immediate holder of the property has here

usually the custody only of the deed under which he claims personally, the earlier deeds are not in his hands and control. When, therefore, the law presumes that the devisee has, as executrix, the custody of the testator's deeds, she ought to be bound to produce them, as the testator would be himself. Perhaps it might be enough to suggest that the evidence of search disproves the presumed fact of possession, and leaves the case in the same position as if the tenant were devisee only. But we are of opinion that whatever presumption may be supposed to have given origin to the rule, the ordinary rule, long recognized here, is that a party, after proof of the original deed to himself, or of his title by devise, or descent, or by extent, or otherwise, may use office-copies of deeds to which he is not a party, but which constitute part of his chain of title, as *primâ facie* evidence, without showing the loss of the originals. And if the copy produced purports to be of a deed regularly executed, acknowledged and recorded, the copy will be regarded as *primâ facie* evidence of these facts, as well as of the contents of the deed. *Southerin* v. *Mendum*, 5 N. H. 428; *Pollard* v. *Melvin*, 10 N. H. 557; *Forsaith* v. *Clark*, 21 N. H. (1 Foster) 422; *Harvey* v. *Mitchell*, 31 N. H. (11 Foster) 582, and cases there cited.

2. The question as to the delivery of the deed seems to have been properly submitted to the jury. It was competent for them to infer, from circumstantial evidence, that a deed, which was not delivered at the time of its signature and acknowledgment, but was deposited in the hands of a third person, for some special purpose, was subsequently properly delivered by the grantor to the grantee.

3. The demandant claimed one seventh of the property in question, by a conveyance from his sister, Phila Brown. In a conversation between her and her mother and sister, while they were living together in the house on the premises, and before her deed to the demandant, she stated in effect that her brother, Nathan, Jr., owned the farm, and

she had no right there. This evidence was competent, because, being made at a time when she was in the occupation of the property, it gave a character to her possession; *Bradley* v. *Spofford*, 23 N. H. (3 Foster) 446; *Walcott* v. *Keith*, 22 N. H. (2 Foster) 196; *Cilley* v. *Bartlett*, 19 N. H. 323; and because, being the statement of the demandant's grantor, while she held the title under which the demandant now claims a share of the property, he was as much bound by it as if he had made it himself. *Adams* v. *Smith*, 2 N. H. 389; *Doe* v. *Pettitt*, 5 B. & Ald. 223; *Smith* v. *Smith*, 3 Bing. N. C. 29; *Inat* v. *Finch*, 1 Taunt. 141; 1 Phil. Ev. 39; 1 Cowen & Hill's Notes 265; 1 Greenl. Ev. 221; *Garnsey* v. *Edwards*, 26 N. H. (6 Foster) 231; *Downs* v. *Lyman*, 3 N. H. 487.

4. It is not seen on what principle the declaration of N. Fellows, Jr., testified to by Collins, can be admissible. It is not part of the *res gestæ*, because the fact of his coming to the house in the manner stated was not material; and because what was said threw no light upon and gave no character to the act, if it had been material. It seems, however, the declaration was merely immaterial.

5. The testimony of J. Blake was incompetent. Neither of the parties to the conversation, or the negotiation, stood in such a relation to the demandant as to make their acts or declarations evidence against him. He claimed nothing under either of them. He was not present, nor any person for him. The written representation to the court of probate was merely a statement of third persons, by which the demandant was not bound.

6. It is suggested that this evidence, and the testimony of W. Eaton, as to the declarations of Dorothy, the widow, were introduced to rebut the evidence of Dorothy's possession, as adverse to Nathan, Jr. As the widow was in the occupation of the farm, her declarations might, under some circumstances, be admissible evidence to give a character to her possession, but there is here no question

as to her possession. The demandant claims no title under her, and makes no pretence she was in possession under him, or any of the heirs whose shares he claims. Her possession consequently was merely immaterial, and what she said in regard to it was inadmissible.

7. There seems to be no valid objection to the testimony of the neighbors, as to the manner of the plaintiff's occupation of the farm, and the absence of adverse claims. To establish a title by adverse possession, it is essential to show possession under a claim of title. The fact of such claim may generally be shown by unequivocal acts or declarations; but, when this cannot be done, evidence of the manner of occupation, as tending to show the right claimed by the occupant, and the conduct of others, as tending to negative the idea of possession under a license or lease, may be introduced; and upon such circumstantial evidence a jury would be warranted in inferring that the possession was held under a claim of title. Any circumstances tending to show that the possession was held by the permission or acquiescence of others, would weigh heavily against the occupant. The absence of such circumstances ought surely to weigh in his favor.

The testimony of Blake and Eaton being improperly admitted, there must be

*A new trial.*